All right. Case number 16-3277, Acquaah v. Sessions. Ms. Welcher. Good morning. Good morning. May it please the Court, my name is Emily Welcher. I'm appearing today on behalf of Petitioner, Mr. James Obese Acquaah. This matter comes before your honors this morning on a decision rendered by the Board of Immigration Appeals on July 29, 2016. I'd like to discuss two somewhat convoluted issues before your honors this morning. The first relating to Section 216C4 of the INA, which I'll refer to as the Good Faith Waiver. The second relating to Section 237A1H of the INA, which I'll refer to as the Fraud Waiver. I'd like to touch just briefly on the first issue, which has to do with the Good Faith Waiver. I'll start by noting that Mr. Acquaah entered this country over 30 years ago in 1984 on a visitor visa from Ghana. He met and married Ms. Sharon Collins here in Chicago two years later in 1986. To this day, Mr. Acquaah has never conceded that he entered into marriage with Sharon Collins for any other purpose except to establish a life together as husband and wife. Nor has Sharon Collins ever conceded any allegations contrary to this point. Now, I recognize the jurisdictional bounds of this court, but I'd like to make it clear that the focus of a Good Faith Waiver under Section 216C4 is whether a foreign national can establish by a preponderance of the evidence that at the time he entered into a marriage with a United States citizen, he did so in good faith. In 2011, Mr. Acquaah was granted the Good Faith Waiver, and facts unraveled shortly thereafter, which caused the IJ to vacate his decision granting that Good Faith Waiver. My main point on this argument is that the subsequent revocation and denial of Mr. Acquaah's Good Faith Waiver directly resulted from the fraud and misrepresentation that came to light after his biometrics results were received by DHS. That brings me into my second point, which is the IJ's decision and the Board's subsequent affirmation to deny even initial consideration for a fraud waiver to Mr. Acquaah. So the question we have before us, in your view, is whether or not the denial was directly caused by the fraud? That's correct, Your Honor. Okay. And suppose we would decide in your favor what further proceedings would be held? Your Honor, I would ask that the court remand this decision to the immigration judge so that they could make a discretionary ruling on whether Mr. Acquaah qualifies for the fraud waiver. So the question of whether he gained the system isn't really before us today, although it may be before the Attorney General in the exercise of discretion, am I right? That's correct, Your Honor. You just want us to look at statutory eligibility? That's correct, Your Honor. So the fraud waiver under Section 237A1H is rooted in humanitarian principles. It states that a waiver of deportation for fraud or misrepresentation directly resulting from such a fraud or misrepresentation may cure the fraud. Tell me this. Was everything relating to Asawa, including the marriage and the application for permanent residency status, done under the entirely different name of Kofi Obese? Yes, Your Honor. Everything? Everything, Your Honor. And did he actually divorce her and remarry her in 1991, or did he never divorce her at all? It's unclear, Your Honor. The administrative record in evidentiary hearing, Mr. Acquaah stated that it was a customary marriage in Ghana, and the two did have a child in Ghana together, which he didn't know about until he came to this country in 1984. So I'm not sure that there's an actual marriage certificate or divorce certificate from Ghana in the record. It was more of a customary marriage. But he did list her as his ex-spouse in his application to marry Ms. Sharon Collins, a U.S. citizen. So was his permanent residency through his marriage to Asawa conditional? It was also conditional, Your Honor, yes. And was he pursuing residency separately through that channel under another name the entire time? He was seeking lawful permanent residency status through his marriage to Sharon Collins. Not for the entire time, Your Honor. He married Sharon Collins in 1986, and two years later, in 1988, they went for their interview to file jointly a 751 petition to remove the conditions on residency. At that time, they appeared at an interview, and in 1991, over a year later, the service issued a letter to Mr. Acquaah with a notice of intent to terminate his conditional resident status for failure to show that the marriage was bona fide. So the initial notice to terminate the marriage with Sharon Collins was also based in fraud. It wasn't until many things happened in between that time, but it wasn't really until 2011 that Mr. Acquaah was even able to appear before an IJ to adjudicate the good faith of his marriage on the merits. And in between that time, he had divorced Sharon Collins in 2003. So the first adjudication opportunity came 25 years after the marriage. That's correct, Your Honor. It's unclear why the service, I'm not sure if his petitions have been lost. Mr. Berg was his attorney at that time. He filed a slew of renewed 751 petitions. By the time that Mr. Acquaah was able to even come before an immigration judge, he had married, he had divorced Sharon Collins, rather. So his case was administratively closed so that he could apply for the good faith waiver under Section 216C4. That case came before IJ Vinicor in 2011, and he had granted him the good faith waiver at that time. It was only after DHS received Mr. Acquaah's biometrics results that he was flagged as a person with two identities in the United States. And DHS motioned to reopen deportation proceedings. Soon thereafter, in 2013, Judge Vinicor granted the department's untimely motion only because, per the statute, he was allowed to reopen based on the allegations of fraud. But precariously, he is still not deemed eligible for the very waiver that relates to fraud, Section 237A1H. I want to focus on the Board's articulated basis in denying Mr. Acquaah eligibility for the fraud waiver. The administrative record at page 3 states by the Board that, even assuming Mr. Acquaah's adjustment qualified as an admission, he's nonetheless ineligible for a fraud waiver because he was found deportable not for fraud or misrepresentation, but for having his conditional permanent residence status terminated. I believe that this is a contradictory conclusion. I'm not sure how the Board and the IJ can allege that he was found deportable for having his conditional permanent residence status terminated when the very fact that his residence status was terminated was because the fraud was unraveled from the biometrics results. My main argument on this point is that the Board reached an incorrect legal conclusion here in its articulation, and as such, I'd like this Court to remand so that Mr. Acquaah can be considered eligible. That's not even a discretionary decision. We're just at the initial eligibility stage at this point. When you look to the Board's reasoning and decision, it lists a number of reasons for denying his eligibility and for terminating his conditional residence status. Some of the reasons that they list is that he failed to inform the IJ that he was married to two women at the same time, which I believe is rooted in fraud. He failed to inform them that he had a child born in this country, which I believe is also rooted in fraud, and he failed to inform them that he had previously been granted permanent residence status and provided false information such as his name and birth date on a previously filed adjustment. These are all rooted in fraud, Your Honors. Moving on, I'd like to just touch briefly on... You do know that your red light is on. I'm sorry, Your Honor. I can't allow you to move on right now. Thank you, Your Honor. I will give you another minute for rebuttal. Thank you, Your Honors. Thank you. Ms. Smith? Good morning. May it please the Court? Catherine Smith for the respondent. This case does have an incredibly complicated procedural history. Do you have any explanation for the delay in adjudicating the agency's appeal from the immigration judge's termination of deportation proceeding or for the years it took the agency to deny his I-175 petition? I believe there was a delay between when he first filed it in 2003 until it was denied in 2010, and I don't know what was the cause of the delay during that time. It was ultimately denied because Mr. Acqua didn't go to his interview. So while he was pursuing this application for CIS for this whole time, he didn't actually follow through himself, and that's why he ended up back in immigration court. If he had appeared for that interview, it's possible he could have resolved the matter himself at that time, but he didn't appear and didn't provide a reason for failing to appear. So some of the delay was also caused by Mr. Acqua as well. Would you concede that the termination of his conditional permanent residency status was integral to his alleged marriage and identity fraud? Integral, yes. When you look at the board decision, the board denied the good faith waiver on very specific and narrow grounds, that he failed to inform the immigration judge of key facts, his marriage to his wife in Ghana and the child, and he provided false information on applications. The board cites matter of Monroe to support the reasons for this denial, and that case is about saying that DHS can terminate conditional status when someone provides untrue information. The information in the applications he submitted was untrue, so it's not exactly the same situation as in matter of Monroe, but the mere fact that he provided false information was enough to deny the good faith waiver. My argument on that point primarily is that Mr. Acqua's waive challenge to the denial of the good faith waiver. He doesn't develop this argument in his brief. He doesn't refute the specific findings by the immigration judge. Indeed, he appears to be trying to bypass this waiver entirely by seeking relief under a different waiver, the fraud waiver. And my argument regarding the fraud waiver is that he's failed to exhaust his current eligibility theories for why he should be able to be eligible for this waiver. When he appealed this issue to the board, he stated merely that the immigration judge erred in not adjudicating the waiver, and that had it been adjudicated, he would have been eligible for relief. That's all he said. The board wasn't required to build up straw man arguments on behalf of a represented applicant and refute them and reach the complicated issues that he's raising today. His arguments are based on a Ninth Circuit case, Vasquez, which is not a new case. It was decided in 2010, I believe. So there's no reason that these arguments couldn't have been made to the board and allow the board to address the complicated interplay between the 1991 charge of deportability and a modern waiver that didn't exist at the time and decide these incredibly complicated statutory immigration issues. In his brief to the board, he said that his misrepresentations were waived by equities balanced in his favor pursuant to his 237A1H waiver, which he prepared and filed. He says the IJ refused to adjudicate that waiver request, and the judge erred in doing so. That's correct. Is that not enough? That identifies the issue, but it doesn't give the board any reason to know what he's challenging that basis on. It's just a very perfunctory argument, and had such a perfunctory argument been made to this court under Delgado-Arteaga, the court would probably find that's insufficient to alert the court of what issues are before it. I can't speak for the board on Vasquez because the board hasn't said it, and I don't want to violate Chenery, but there are a lot of reasons why the board might find Vasquez inapplicable to this case. Particularly, I'd like to emphasize footnote 12, where Vasquez itself distinguishes cases like this one. So even in the Ninth Circuit, it probably would not apply to the particular facts of this case. Well, wait a minute. Are you arguing that Vasquez was wrongly decided, or are you simply hoping that we agree with you that he's forfeited his argument based on Vasquez? Which is it? No, Your Honor. Vasquez dealt with a different set of facts, and the court in Vasquez in footnote 12 said we're not addressing situations like Mr. Acqua's. It didn't mention Mr. Acqua by name, honestly, but it said we do not consider here cases in which the alien gained admission into the United States on some basis other than the marriage, but later married and then adjusted her status to that of a conditional permanent resident. We only address Vasquez's situation in which the basis for admission was a fraudulent marriage. Why should that make a difference? Yeah. Particularly, as I understand it, the 237A1H waiver the board has said applies to fraud at any time, not just at the time of entry, right? It might not make a difference, Your Honor. I don't know what the board would say if it were presented with these arguments properly, but that would be one possible way it might distinguish it. The board could also decide that an alien should not be allowed to completely bypass the good faith waiver by skipping over those statutory requirements and going to an easier fraud waiver. These are the types of immigration policy decisions that should first be presented to the agency. I'm sorry. How is asking for a discretionary excuse of fraud easier than the good faith waiver? I would think that the administration ought to be fairly hostile to both. Well, if an applicant such as Mr. Acqua is able to drag out his case for a sufficiently long time. Hold this. Who dragged out this case? There was a period of at least a few years in there where it was probably the government's fault, but we don't know what happened. We're talking 20 years. 25 years from the marriage until the first adjudication. Had he not committed fraud by remarrying his wife from Ghana, his case would have never been reopened in the first place. I would argue there are, at a minimum, serious delays caused by both sides in this case. Okay, so we're not trying to claim the moral high ground for the administration, right? No. Okay. Though had Mr. Acqua's fraud been discoverable earlier, this case would have likely been resolved much earlier. And I would argue that... At least part of what we're hearing is that he's saying, I've got a sick daughter, my wife is dying, and the agency has taken more than 10 years without acting on my application for relief. I would point out that application itself was already fraudulent by that time. By that time. When he submitted the application for the good faith waiver with Ms. Collins, he was already remarried to his wife from Ghana, and he did not disclose that information on the application. But the government's primary argument here is that this incredibly complicated argument really needed to have been raised to the board in the first instance. For me to step out in front of the board and say how it would address them now would violate Chenery and get us into a whole mess of confusion. More so than we are now? Exactly. There are a lot of complicated immigration policy matters to decide whether or not someone's eligible for this type of waiver under these circumstances. Isn't it a fairly straightforward question about causation? In the language of the statute, this refers to a direct result, right? I think it is more complicated than that, Your Honor. Why? Well, I didn't get into the actual merits of the fraud waiver in my brief because the board didn't. So I don't want to speak for the board to say why it is... The board might agree with Mr. Acqua. It's possible it would have had he presented this argument earlier. But the Ninth Circuit's decision in Vasquez shows how complicated this issue is when they tried to address it there. And the fact that there is a statute for the good faith waiver as a separate matter shows that there are a lot of issues at stake here. You said earlier, Counsel, that the basis for the termination of his conditional permanent resident status, if I understood you correctly, was false information, incorrect information. In the application, is that right? The most recent denial in the board's decision that's before the court today, yes. Right. Are you distinguishing there between information that happens to be incorrect and information that is intentionally fraudulent? The board does not make that distinction, Your Honor. Should we? If otherwise, it sure looks like a direct result of the alleged fraud to me, frankly. Could you rephrase your question? The termination of his conditional permanent resident status as described with the reasons given by the board. If I got this right, hang on. Right. Third paragraph. Yeah, failed to inform the immigration judge while living in the U.S. He was married to two women at the same time, had a child born in this country, and had previously been granted permanent resident status and that he provided false information, i.e. name and birth date, on a previously filed adjustment application. That sure sounds like the same information that is the basis for the fraud from which he is seeking a waiver, right? So I don't know how that decision is anything other than a direct result of the alleged fraud. You've told me it's too complicated, but I'm not seeing the complexity in that question under the statute. The statute doesn't waive all fraud. Doesn't waive all? All types of fraud. The statute is a little bit more complicated than that. The fraud waiver itself doesn't apply to every kind of fraud somebody might commit at any time. The boards recently addressed the statute in matter of TEMA, and in that case the party was arguing that the crime involving moral turpitude that he was convicted of really relates to the fraud, so therefore the fraud waiver should waive the crime involving moral turpitude and tried to extend the fraud waiver more broadly, and the board rejected the argument in that case because some crimes involving moral turpitude might relate to the fraud and other ones might not. And the board found that under Mathis and the current cases involving divisibility and modified categorical, it's not able to figure out which CIMTs are waived by the fraud waiver and which are not. We can't get into that analysis, so the fraud waiver can't waive those kinds of fraud. I see I'm out of time. I can address it further if the court is interested, but I'm happy to rest on the briefs. I think we have to. Okay. And, well, two minutes for rebuttal. Thank you, Your Honor. I just want to address on a very human level that Congress intended this fraud waiver to apply to foreign nationals who have family ties here in the United States. Mr. Acqua concedes that he lied to the IJ, but I think that we can all understand why he did so. He had a wife with sickle cell anemia, a newborn baby who was diagnosed with the same. His wife ended up passing away in 2008. The government sat on and lost his application for a number of years. He knows that it was wrong, but he lied so that he could stay here in this country and provide adequate health care to his newborn child. With respect to Ms. Smith's arguments, we stated in our reply brief as well that we are amenable to remanding the issue of the fraud waiver for discretionary relief so that we can argue Vasquez with the IJ and with the board as well. Thank you, Your Honor. Thank you very much. The case, thank you very much. Case will be taken under advisement.